Mr. Chief Justice, and may it please the Court, over the last three decades, the Court has made clear that Bivens Remedies are disfavored and will only be authorized in narrow situations where there are no adequate alternative means for redressing a plaintiff's injuries and no other factor counsels hesitation. Respondent has satisfied both of these arguments. He has not shown that he lacked a traditional tort remedy for the injuries of which he complains, and Petitioner's status as employees of a private contractor rather than the government, at a minimum, gives rise to factors counseling hesitation. Ginsburg If we go back to what you said initially, that is, if there's no alternative remedy, Bivens fills the gap. Suppose we had a case just like Carlson, only the State law allows survivor actions. In Carlson, I thought the rule emerging from Carlson is that prison personnel in Federal prisons are subject to Bivens Remedies. And we don't look in each case to see whether there could have been a State tort. Isn't that so? Katyal In the rule, the Carlson rule still applies, Your Honor, because that involved actual Federal government employees. And since Carlson, Congress has preempted all tort claims against them. So whether Indiana law now, which has been amended, but whether Indiana law provides a remedy or doesn't is immaterial because Congress has preempted all tort claims against actual employees of the government. But this case involves the Petitioners are not employees of the government. They are employees of a private contractor. And under the Westfall Act, what Congress did was preempt all claims against actual government officials while preserving Bivens Remedies. But it did the opposite for employees of private contractors. For them, there are adequate alternative tort remedies. And it's virtually undisputed in this case that there was such a remedy here. And they are deliberately, Congress expressly excluded them from the category of employees against whom it preserved Bivens Remedies. So, yes, in the Carlson situation, there is still a Bivens claim because Congress has expressly preserved that. But here we have a different congressional policy that we are, in effect, asking the Court to embrace here. What Congress did in the Westfall Act is it said what, in effect, we are asking this Court to recognize and what we believe the Court has recognized in cases like Moleskoe. And that is where there are adequate alternative tort remedies – excuse me, where there are no adequate. Kagan. Kagan. Sotomayor Well, suppose, Mr. Franklin, that there weren't. I mean, I think you have a good case about California law here. But suppose we were in a State where the law was very different from what California's  where the basic negligence tort was unavailable to inmates because there was a finding or a holding of the State supreme court that there was no duty on the part of jailers to inmates. What would happen then? Franklin In that hypothetical instance, and we do think it's hypothetical, we think that that would be a different case, and the Court could in that circumstance say there are no adequate alternative remedies. But the reason we think it's entirely hypothetical is there has nothing been shown in the briefing of this Court and as the Ninth Circuit dissenters made clear, that any State doesn't afford the bedrock cause of negligence. And that cause, as the Court held in Moleskoe quite expressly, is not only adequate to redress any actions that would violate the Eighth Amendment, but it's actually superior. Ginsburg There were some references to Mississippi law that seemed to be inconsistent with the notion that all States would provide an adequate remedy. Franklin I believe that reference, if I'm correct, comes from an amicus brief, and that law does not, would not on its face prohibit an action against a private managed prison holding Federal prisoners. These laws, and the Mississippi law is an example, there's a New York law, those apply to State government officials. They are similar to the Westfall Act, but on a State level. They immunize State government officials from claims. But those claims would be subject to 1983 actions. Here we have a privately managed prison holding Federal prisoners. Ginsburg And it might hold State prisoners as well. Franklin I'm sorry? Ginsburg It might hold some private facilities will take State prisoners as well as Federal prisoners. Franklin There's been some representation that we don't disagree with, that there might be some facilities that have State prisoners. Ginsburg And if they do have State prisoners, the State prisoner would have recourse to, not Bivens, but 1983. Franklin Most likely, Your Honor, yes. Ginsburg So you have two prisoners, identical mistreatment, and one gets a Federal remedy and the other doesn't. Franklin The other actually gets what the Court in Malesko described as a superior remedy. The prisoner, the Federal prisoner, has in that sense a remedy that's beyond the Eighth Amendment. Kennedy Can you tell me why it is that you care in this suit? If you're telling us, oh, don't worry, there's going to be liability and probably perhaps even more extensive liability than in Bivens, what difference does it make? Bivens doesn't give you attorney's fees. Now, it's true that the Federal question may get you in the Federal court, but. Franklin Well, I have several answers to that. First, Your Honor, my clients care very deeply in this case, because as the district court held, if there's no Bivens remedy, this case is dismissed. This case was dismissed on the lack of a Bivens remedy. Kennedy Oh, just because of statute of limitations? Franklin It's way too late now, 10 years after the incident, for them to now assert State law claims. So we do care. And in fact, that was the same situation that was in Malesko. In Malesko, you had a virtually identical situation where there was no Bivens remedy. Kennedy If we're looking forward beyond this case, and there's no statute of limitations problem, does it really make any difference that you have a second cause of action that's just A, duplicative, or B, arguably more narrow? Franklin Well, two points. I'd like to first say, as the Court in Malesko adopted the principle, that if there is an alternative remedy, that's not a reason for piling on a Federal remedy, that's a reason not to. But in a practical sense, I understand. Kennedy But why? What difference does it make? Franklin Let me give you a practical sense. Kennedy Who cares? Franklin It doesn't make a huge difference. It does matter for individuals in my client's situation. If a State tort claim is brought, there is responding act superior liability under a State tort claim. And in many, if not most cases, the plaintiff will choose, voluntarily choose to sue the corporation and leave the individual out of the case. Now, the deterrent effect that Bivens is concerned with still exists, because the case can be brought against the individual. However, if there is a Bivens claim, that has to be brought against the individual. It cannot be brought under responding act superior. So if there is a Bivens claim, as a practical matter, you are going to see more and more individuals being dragged through these cases without, by the way, the recognized qualified immunity defense. Kagan Mr. Franklin, do you have a theory about why these are brought as Bivens claims? It seems mysterious to me. If you bring it as a negligence claim, you get a lower standard of liability, negligence versus deliberate indifference. You get vicarious liability. So I've been trying to puzzle out, why aren't these brought as negligence claims rather than as Bivens claims? I can't answer that question. What I can say, well, I can try to answer it, but I can say that if the Court rules as we ask it to in this case, we think that there will not be Bivens claims, that people will bring them under the tort law. It could be that there are forms in some of these prisons that are given out that have Section 1983 written on them, that Bivens is there. It could be that the prisoners are not quite aware that the Westfall Act doesn't cover private contractors. But we would think that if the Court rules as we suggest it should, that the prisoners who are relatively savvy, even on a pro se basis, about the rights, would then understand that they have these rights and will exercise them, and that the Bivens remedy would not have to be employed willy-nilly as it was in this case. Kagan, to go back about what I asked before, when I hypothesized a State that didn't have adequate remedies and you said, well, well, just to pin down what you said, if there were no adequate remedies there would be a Bivens action available? There might be, Your Honor. There still is the factors counseling hesitation, which is the second step of the Bivens analysis, and I wouldn't want to give up that there might be factors in those cases counseling hesitation. But certainly, our position is not that in a circumstance if that arose, and again, we think it's hypothetical because there's no indication either that it has arisen or that it will arise. But if it were to, our position wouldn't rule out the possibility of a Bivens claim in those circumstances. Alito To get back to the question that Justice Ginsburg asked, is that consistent with Carlson? Because according, Carlson didn't say that there's a Bivens action because in this particular State there isn't a viable State action, but it might be different in another State where there is a viable State claim. It did it on basically a categorical ground. Well, as the case came to the Court in Carlson, it was undisputed that there was no adequate State law remedy that the lower courts had held. So that was sort of the basic premise that the Court then went ahead and decided the case on. Since Carlson, we've had cases, notably Malesko, also Wilkie, which have made clear that the adequacy of remedies, including State law remedies, is a factor in the Bivens analysis and is, in fact, the dispositive factor in Malesko and as in this case as well. We don't think that there is really any serious dispute in this case that there were adequate alternative remedies. Again, the deliberate indifference standard is much, much more hard to meet than a traditional negligence standard. California law is furthermore protective of prisoners. As we understand the Respondent's position, the Court, they would urge the Court, notwithstanding the availability of alternative remedies in this case and as far as we can tell in every foreseeable case, to create what they refer to as a categorical cause of action, one that would apply regardless of whether the remedies are adequate or not. And in our view, that would turn the Bivens jurisprudence effectively on its head. The Court has said Bivens is a narrow, I think Justice Ginsburg at least paraphrased our argument as saying it's a gap-filling mechanism, which is what our argument is, that would apply only in those circumstances when it's necessary. Other than that, the Court has consistently deferred the matter to Congress, and that's where we think it ought to lie in this case. Alitoso, does a prisoner in a State that requires the filing of a certificate of merit in a medical malpractice case have a viable alternative State claim to the medical malpractice? We say yes, that issue is not in this case. The Eleventh Circuit in ALBA expressly addressed that issue under that State's law and said, yes, that is adequate. It's simply a procedural requirement that applies to all plaintiffs. And I would add, by the way, that it would not be in this case. How is a prisoner supposed to satisfy that requirement? The same way any other plaintiff is supposed to satisfy that. But what I was going to add is that when you're alleging an Eighth Amendment violation, you're talking about a claim that's by its nature very severe. You're talking about deliberate indifference to serious medical needs that constitutes the unnecessary and wanton infliction of pain. In those circumstances, we would suggest that it might even be easier to procure that kind of a declaration. But that issue was decided in ALBA, so that was decided. If it comes up in another case, it can be decided there. We don't think that that would render the — if it's an adequate remedy for everyone else in that State, in most States that have these things, then it's an adequate remedy for Bivens. Ginsburg. Did any of those courts address the problem of how the pro se prisoner is going to get an affidavit? Well, ALBA, the ALBA court is the only court that I'm aware of on the circuit level that considered it. And I believe they did address that issue and simply said that it puts them on an equal footing with other plaintiffs, and that that would be an adequate remedy. I don't understand your answer to Justice Kagan. If I heard you right, you were saying, well, they're going to be able to get a certificate because it's an Eighth Amendment violation and everything is very severe. But the point is they're going to bring a negligence action, not an Eighth Amendment action. So. I'm talking about if the conduct — we're comparing here between conduct that would violate the Eighth Amendment and conduct that's negligent. And I'm saying if the conduct rises to the level of an Eighth Amendment violation, which is what we're talking about in terms of the adequacy, then it would be easier to report. Kagan. I think the question, Mr. Franklin, is really just a practical one, which is how a pro se person sitting in prison is supposed to have access to a doctor who will provide this certificate. And, I mean, maybe there would be means, but I guess I'm asking whether there would be. I would think there would, but I don't want to argue someone else's case on that. I mean, I do think that that was an issue that was resolved at least in the Eleventh Circuit in ALBA. It's not an issue that applies in this case because there's no such certificate here in California. I do think it would be adequate. I mean, Bush v. Lucas, which is a Federal remedies case, said there were what they called meaningful remedies. As long as there's a meaningful remedy, it's sufficient. And if Congress wants to think that there's a problem, for example, if Congress thinks there's a problem with these certificates of merit in the case of privately run facilities, then it certainly can establish a cause of action as it did in Section 1983. But the Bivens doctrine is really a narrow, as we say, gap-filling doctrine, and the Court has always used it very sparingly. And the reason the Court has done that is because there is no authority for it in the language of any constitutional or statutory provision. So the Court has always treaded very cautiously in this area. And I wouldn't rule out in that circumstance that somebody could make that argument. I just don't think in this case there's been any real dispute that there's an adequate remedy. There wasn't in Malesko, and that was sufficient in that case.  And if the Court wants to make that argument, we do not want to change that, say, it's Bivens' hand and turn the matter, if necessary, over to Congress. Under the PLRA, under the PLRA, a district judge has to perform a screening function for these complaints, and is it going to be an impossible burden for district judges to ascertain the contours of State prison law, in that there apparently is not a lot of prisoner litigation under State law, most prisoners seem to choose 1983? Well, in this case, the magistrate judge did it, it wasn't an impossible burden for him, that this was done on a prescreening, the Court ruled exactly as we are asking the Court to rule now, the Court did it, the Court in Malesko did it, it wasn't difficult. If it is deemed that there is an issue there, there are various procedural mechanisms that could be employed. There could be a dismissal without prejudice, a dismissal with repleting, certification to a State court, you could stay the Bivens' action, there's various things that district courts can do, but in this case, it wasn't an issue, it wasn't an issue in Malesko, we don't think it's going to be an issue in other cases either. If I may reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Shah. Mr. Chief Justice, and may it please the Court, the last three decades of this Court's precedents make clear that judicial extension of a Bivens remedy is not the default presumption. It is permissible only where there is no adequate alternative remedy and there are no other factors counseling hesitation. Neither criterion is satisfied here. Respondent is suing employees of a private prison corporation who, unlike their Mr. Shah, you go back to what you said about lacking these private, these employees of the private corporation, you said. A couple of responses, Your Honor. First, this Court has never recognized a good-faith defense, so I wouldn't call it a recognized offense. It is true that some lower courts have applied a good-faith defense. Reading those cases, it's not entirely clear exactly what the content of that good-faith defense is. What is clear is that it's something less than qualified immunity. It appears in most of the cases that they're grafting on some sort of subjective element, subjective intent element on top of what you must establish to get qualified immunity. So whatever it is, it's something lesser than qualified immunity. And I think that in and of itself creates an asymmetry. But I think the larger point is, is that these prisoners have alternative adequate remedies under State law because they're suing a private employee rather than a government employee. The government employee is subject to the Westfall Act, and therefore all civil actions other than Bivens are preempted. And so I think that's the fundamental difference. I think it further counsels hesitation because of the lack of a recognized immunity defense, whether that's qualified immunity or good faith. Sotomayor, could you address the question posed earlier of what were to happen if there was a State law that gave absolute immunity to these private correctional officers? And that was the case before us. This particular State, it's undisputed, would not permit any kind of intentional or negligent suit against these officers. Sure. Your Honor, in that hypothetical, and of course there is no suggestion in this case that any State has such a rule, but if a State were to adopt that such a rule, I think that would be a case where there is no adequate alternative remedy, because in your hypothetical there is absolute immunity. There wouldn't be a way for the prisoner to redress, seek redress for the gravamen of his injuries, and I think in that case we have a very different situation and a Bivens remedy may well be justified. Sotomayor, interesting, because what you're proposing is a sort of State by State, State circuit by circuit, presumably, existence of a Bivens claim or not. That's really the outcome of your position. Well, yes, Your Honor, except the fact that there has been no suggestion that any State has such a Dacronian rule or has ever passed one. We're simply arguing for a rule that would limit Bivens to when there is no adequate State law remedy. That's clearly the case here. It's clearly going to be the case in the vast majority of Eighth Amendment prisoners. What this Court should not do is craft a default rule allowing Bivens remedies against employees of private prison corporations just to account for the hypothetical possibility that there may be a case which may or may not ever arise in which an adequate alternative is not. That turns Bivens' experience on its head. Sotomayor, I guess the question is, yes, when you talk about an overlap of remedies, we have said that it doesn't need to be a matching one-to-one remedy, but you do need some degree of meaningful overlap, don't you? I would agree with that, Your Honor. I think the thing is that as long as it would address the gravamen of the prisoner's injuries. I think it would be difficult to come up with a precise formulation. I think the formulation that we use in our brief is that as long as it would address the gravamen of the prisoner's injuries. So I think as long as it provides some meaningful relief for the injuries and in turn that would provide some deterrence to the individual employee's actions, I think as long as those two elements are present, I think we would think that there is an adequate alternative remedy. Or alternatively, if you wanted to use the words that this Court used in Bivens, you could approach it from the flip side and say there would not be an adequate alternative remedy where the State law is either inconsistent with or hostile to the corresponding constitutional interests. We submit in this case there is no question that there are remedies available under California State law and, as far as we know, the State law of every other State in this country that would allow. Roberts. Roberts. The Bivens action is unusual in the first place, but it's also unusual to say that you don't have a Federal cause of action because of something a State gives you. Any other example of something like that where the availability of Federal relief turns on the availability of alternative relief under State law? Your Honor, it may not be an exact analog, but I think Federal due process cases often will look at if someone claims a deprivation of property, an unlawful deprivation of property in violation of process, the Federal court may often look at what are the available State law procedures to provide redress for that claim before it would impose or find a violation of Federal due process. So I think there are analogs where Federal courts do look at the availability of State law remedies and look at their adequacy before determining whether a Federal law remedy is necessary. And this Court has done that, and the Court did it in Malesko, I think, is the best example in the Bivens context of where the Court looked at alternative State remedies and said that, hey, look, the availability of these other remedies counsel against the imposition of a Bivens remedy. Kagan.            Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. But what's the theory about looking to State law for these kinds of alternative remedies? two responses, Your Honor. While I agree the separation of powers problem is much more heightened when Congress acts, I think there's still a separation of powers issue, even when Congress has not acted. That is, the Court should be hesitant before implying judicial cause of action for damages under the Constitution, given that it's typically been Congress' province to do so. But beyond that, the rationales, there have been two rationales that have been given by this Court in its jurisprudence, in its Bivens jurisprudence for implying such a remedy. One is the need to provide some meaningful relief. We submit when there's an alternative State remedy, that rationale has been satisfied. The other rationale this Court has offered is provide some deterrence to the actions of an individual employee or officer. We also submit that when there is a State tort damages remedy available, that rationale too will be accomplished. The three cases in which this Court has recognized a Bivens remedy, Bivens itself, Davis and Carlson, those two factors were not present. There was either no alternative remedy at all, or at least, as in Carlson, no alternative remedy against the individual officer. Alitoso, what would you propose that the Court say about the degree of adequate State remedy that is necessary? Just what we have here in California is enough and not go any further? I think the Court should start with that. Certainly here, there hasn't been any dispute that there would be, any real serious dispute that there would be an adequate alternative remedy. I think the Court could also say that as long as the adequate alternative remedy addresses the gravamen of the prisoner's injuries, that should be sufficient. And I think it could give content to that by looking at the two rationales this Court has offered for Bivens. Alitoso, I suppose that a State did for claims against private prisons and private prison guards what I understand New York has done with respect to State-run prisons. In other words, eliminate any claim against individual prison employees or guards and give the prisoner just a tort claim against the State. Would that be adequate? I think that would be a tougher case. And of course, I assume in your hypothetical that that's, that that would also apply to Federal prisoners and Federally-contracted prisons, and it's difficult to figure out what the State offers. Alitoso, not a claim against the State, I misspoke, a claim, only a claim against the company that runs the prison. Your Honor, again, I think that would be a difficult, a more difficult hypothetical because the rationale about individual deterrence of the individual officer may not be as strong in that hypothetical. But once again, no State has such a rule, and it's difficult to imagine a State's  these are Federally-contracted prisons, contracted by BOP and run by private prison corporations. Ginsburg. What about the character of the claim? If it's a Bivens claim, it's a constitutional claim, it's an Eighth Amendment claim. And if you're looking to State remedies, that's an ordinary tort remedy with no constitutional involvement. Your Honor, it is true. The labels are different, and there's going to be different meaning to those remedies. But from the prisoner's standpoint, the rationale behind Bivens was to provide some damages relief. From the prisoner's standpoint, it's not going to matter, I would submit, whether that those damages are procured under State law or under a constitutionally implied action. Thank you, Your Honor. Roberts. Thank you, counsel. Mr. Price. Mr. Chief Justice, and may it please the Court. The question before the Court today is whether a Federal prisoner's access to constitutional remedies should turn on the mere happenstance of where the prisoner is detained. The Petitioner's chief argument is that privately held Federal prisoners should not have an Eighth Amendment damages remedy because they have remedies under State law. This argument suffers from two flaws. First, it misconceives this Court's Bivens jurisprudence. Second, it misconceives the nature of State remedies available to prisoners. Sotomayor, why are State remedies what of your client's claims could not be vindicated under State law? And why is a Bivens action superior to a negligence action in California? Your Honor, with regard to the claims that can't be vindicated under State law, we think it's likely that his medical malpractice claims, the claims against the doctors, could be vindicated. We don't think the law is clear in Virginia --" excuse me, in California, that his other claims, deprivation of nutrition and hygiene, forced labor at some point before he was his injuries were healed, that those would necessarily be covered. We admit there's a chance, as we did in our brief, that it's possible the California Supreme Court could say, well, there's been an intermediate appellate court who's decided this, we take on guidance that and believe these remedies would be covered, but there's nothing here that could assure this Court that that's the way it will work out. With regards to why Bivens are superior, Bivens are superior when there's no State cause of action. So there will be some cases, as we concede, where a State cause of action is available. The reason Mr. Pollack brings a Federal cause of action in this case is because it's not clear that State remedies are certainly available. And I think the certainty is an important thing for this Court to remember. The issue before Bivens itself was whether or not this Court should adopt a system of State remedies. And the ---- Breyer, the specific case where the State remedy is not available is? Your Honor, I'm not aware of any particular case where a State remedy is not available. No, no, no. Your allegation, which you believe states a valid claim under Bivens' action, but not under State law, is? The claims that we say do not have a State cause of action. I mean, I don't understand specifically what they are. I mean, it sounds to me that if a person, A, deliberately starves somebody to death, for example, or deliberately gives him something which will make him sick when he eats it, that that would at least be negligence and would arise under ordinary State tort law. So I'm curious to know what your claim is that does not arise under ordinary State tort law. Your Honor, I think at the starkest example, if it was the case that somebody actually starved someone. No, no, no. Give me ---- don't answer my ---- forget my hypothesis. Tell me your specific claim that does not arise under State tort law. That's all I want to know, which is the same question I heard. I just didn't hear the answer. Oh, excuse me, Your Honor. I heard the answer in general. Okay. I want to know specifically what you say they did to your client that doesn't make out a State tort claim. He brings four claims that he thinks alleges an Eighth Amendment violation. One is the medical malpractice, which we concede is likely available. The other three, we do not find sufficient evidence in California law that there will certainly be a remedy. And those three are? I heard you say that. I just want to know what it is physically you say the defendant did to your client so that I can evaluate your statement that California gives no tort remedy for that. Sorry, I don't mean to sound irritated, but I just haven't had trouble getting my question across. Understood, Your Honor. Mr. Pollard was deprived of adequate food and hygiene. A second claim, he was ---- They failed to give him adequate food for what? So he could live or for what? Well, yes, adequate nutrition. I'm not saying he was a ---- And if a person in California who has charge of a ward or someone fails adequately to nourish that ward, you're saying California tort law gives no remedy? I'm saying there's no evidence that it does, Your Honor. I would call it like negligence you give a remedy. It's not negligent. It's deliberate or what? Your Honor, I think I would put ---- I think the best way to approach that question is to look at the shoes of an attorney. When someone comes in and says I was deprived of these benefits that I was entitled to and I suffered a harm, the question would be for the lawyer is, well, I'll go read the case. And the lawyer would say I can't find a starving case in California, so you must not have a cause of action. Is that what the lawyer would say? No, I think the lawyer would say I can't be certain. Breyer, I mean, it sounds odd, because the Eighth Amendment says cruel and unusual punishment. So you have to have a cruel treatment, and where a person deliberately or negligently subjects someone else to cruel treatment, my law school recollection of many years ago, is that there ordinarily is a tort action. So that's what I'd like you to do. I'm suspicious of your statement that there isn't. Therefore, I ask for some elaboration of that. Scalia. What do you have besides starving? What else? The other claims were after he suffered his injuries, he was put back on his work detail before his injuries were healed. He was also immediately after being injured forced to sort of endure excessive security measures, forced to wear particular handcuffs that pushed his arms in a way that caused extraordinary pain and was unnecessary. Can I ask you the same question that I asked Mr. Franklin, because it just doesn't make any sense to me. The gravamen of this claim is a medical malpractice claim. Why aren't your State law remedies better? You have vicarious liability, and all you have to prove is negligence. Why wasn't this brought as a State law claim? Your Honor, I think there's two parts to that, two answers I would give. First, Mr. Pollard was put in a Federal prison by the Federal Government. He often has access, actually only has access to Federal law books. When he sees himself injured, he thinks this is presumably a Federal case. So I think there is a certain ethic or at least practice as how that works. Now, why wouldn't medical malpractice work here? But it would look like false consciousness that we can correct, right? Excuse me, Your Honor. I missed the beginning. I mean, if the true appropriate remedy and the better remedy from your client's point of view is a State law action, we should just say bring a State law action. Well, we think that prisoners should have access to the State law action, and when there's a cause of action available, it might indeed be a better remedy. But I think in terms of whether or not medical malpractice works here, it will work in terms of deterring the medical professionals. But we have multiple defendants in this case, not all of them of which will be culpable under or liable under a medical malpractice regime. How do we handle the other prisoners? Excuse me, the other defendants. So I think you're focused in terms of the remedies available, and I would concede, of course, that's important to the prisoner. But, of course, the Court is concerned with deterrence in these cases. So I want to return to Justice Breyer's question, if I might. The gravamen of this case is, in ordinary cases, most of the time, and the Court is required in this case to figure out how big is that most of the time. Is it 99 percent of the time? Is it 80 percent of the time? And that's what we simply don't have evidence on in this case. I want to put it this way. Breyer. When I went to law school, which was many years ago, instead of talking about, like, starvation cases or medical malpractice, they talked about a general thing called negligence. Yes. And it seemed to apply to doctors, and then it was medical malpractice, and it applied to others, and is there something here that wouldn't fall in that general kind of rubric or the general terms of California tort law? And I know I don't want you just to repeat yourself, so I guess I have the best answer on that. Your Honor, I'll say two things to that. First, I think what you're asking me to do, and which in a sense the Court will be required to do in this case, is predict what State supreme courts will do on a regular basis. And I would suggest that's sort of an extraordinary measure to take in a case where you have Federal prisoners, Federal constitutional rights, and Federal actors. Sotomayor, limit our inquiry to California. Excuse me? Limit it to California. What they're saying, don't look at what other courts will do. Just look at the State you're in, the place you're going to make your claim, and figure out whether your claims are covered or not covered essentially in that State. They're suggesting this Court look only at California. We don't think that's appropriate. This Court's view has always been that a Bivens action exists or does not exist with regards to an entire category of defendants or context. Scalia, if there is one State that would not have an adequate remedy for any, any single bad thing that could happen in prison, there's a Bivens action for everybody, for everything. Is that what you're saying? Yes, Your Honor, we are. I think if the Court were to write an opinion in that case. I certainly wouldn't want to hold that. Well, I'm not surprised that you wouldn't want to hold that, Your Honor. I would find that rather surprising, too, actually, because I think that what they're asking to do is fine on their theory. You have no problem, because you go back and show to the Court that there is no remedy in California for shackling a person, I guess deliberately, with knowledge that that will cause severe pain. And if you can show that, then you're going to have your Bivens action in respect to that. What they're saying is that you're not going to be able to show that, so it doesn't worry them. Your Honor, I think that the view that there's an ordinary duty of care, a duty to be reasonable, is quite a bit more complex than the Petitioners would make it out to be. Let me offer an example. In this case, in 2007, the district court dismissed Mr. Pollard's complaint. The district court said, you have State remedies. Well, what was the proof for that? What was the State law remedies that existed? The only thing the district court cited in a footnote was section 1714 of California Civil Code. Scalia. Who says that the burden is on the other side? Why isn't the burden on you, if you want to bring a Bivens action, on you to show that there is not an adequate State remedy? You're the plaintiff here. You're trying to bring a Federal cause of action. Our law is clear. If there's an adequate remedy, we don't invent one. Why isn't it your burden to show that there is not an adequate State remedy? Your Honor, two answers to that. First of all, this Court's most recent case where it's dealt with whether or not a burden should exist was Wilkie. And there, the majority of the Court said, when we look at alternative remedies, we try to figure out, quote, Now, I think there's an important point here when we think of burdens. This case is so close to Carlson that, really, the burden should be on them to take it out of Carlson. I want to address Carlson for a second, if I may. Well, before you do, on page 5 of your brief, you say in your brief that, quote, In the private prison setting, quote, a Bivens claim against the offending individual officer, end quote, is an appropriate remedy. And the quote's from Malesko. Yes. What we said in Malesko, where you quote, Now, your friend describes that as a distortion of what we said in Malesko, and I just wanted to give you a little bit of context. And then I'll give you a chance to reply to what I think is a fairly serious assertion. Yes, Your Honor, and I would seriously disagree with the suggestion it's a distortion. Well, just to be clear, you quote that language, you say in the private prison setting, and the language specifically says in a BOP facility. Your Honor, what the Court was speaking of in that section of its opinion was that the remedies between a BOP facility and individuals in a private facility should be similar, that it made no sense to give extra remedies to people in a private facility. And so the Court, Chief Justice Rehnquist at the time, was making a comparison, saying there should be a general symmetry. And all we were pointing out in that quote is that inasmuch as symmetry matters, well, the Court there in Malesko had said, well, we would likely expect there to be an individual remedy. You would expect the same rule, that's your argument, to apply in the private prison setting. What you say is that there we explained that in the private prison setting, a Bivens claim against the offending individual officer was the appropriate remedy. Your Honor, I guess I certainly took part of the quote and didn't use all of the quote, but I did not in any mean saying, mean decision. That's known as misquoting. Well, Your Honor, I guess I would respectfully differ. Would you be taking the position that even if there is an alternative State remedy, tort remedy, even so, there ought to be a parallel Bivens action? Or would you say no Bivens action if all of the States have adequate tort remedies? I think, Your Honor, if this Court would — could tell with confidence that States in all States provided sufficient remedies for the entire variety of Eighth Amendment violations, this Court would be certainly wise in allowing State remedies to work. But I think we're far from that situation. I want to turn, if I may, in the time. Kagan. Do you want to give me your best example of a State tort rule that would prevent a prisoner from bringing an Eighth Amendment claim? Excuse me, Your Honor. Could you repeat that question? Your best example of a tort rule from any State that would preclude a valid Eighth Amendment claim. In other words, the prisoner would have an Eighth Amendment claim but not a tort. You have 50 States' worth of tort law to — as your playground, and I want to know what tort rule would keep a prisoner with a valid Eighth Amendment claim, would prevent him from recovering. Your Honor, I would note Maryland, for example. In Maryland, attacks by a prisoner on another prisoner are evaluated in terms of the liability of the warden, a lot evaluated on a maliciousness standard. Now, the standard this Court uses in attacks by one prisoner against another is a deliberate indifference standard. The deliberate indifference standard is different. We're not arguing in this case. I don't understand what you're talking about. Is this a suit against the prisoner who was attacked? Excuse me, Your Honor. He's not liable unless he's malicious or what? No, it's a suit against the warden for failure to protect someone against attack by another prisoner. And the warden is liable in Maryland, you say, only if he is malicious? The test in Maryland is maliciousness, yes. What about medical malpractice caps? Is that an issue? In other words, State law, I don't know how many there are. I know it's been proposed. I think it's true in some cases will cap your recovery for medical malpractice at a particular level. Your Honor, I don't think it's a significant difference in this case, for instance, California. Roberts, that was a helpful question in the sense that the Bivens action, presumably the cap would not apply, but it applies under State law. I think there will be some cases in which the remedies will be curtailed under State law, and one could expect that the deterrent value of a State law remedy would not be available. I have a couple minutes remaining, and I want to turn to Carlson. I think the suggestion is in this that we've the discussion that we've had so far is that we're asking the Court to reach out and create an extraordinary cause of action. I simply don't think that's true. This case is very similar, if not the same, as Carlson. In Carlson, the Court said that a Federal prisoner has a cause of action against Federal actors for a Federal constitutional right. That's what this case is, and the only distinction the Petitioners can point to is the fact that they are privately employed Federal actors as opposed to publicly employed Federal actors. So the question becomes, is privately employed Federal actor a meaningful distinction from publicly employed? We would have — if that distinction is meaningful, we would have expected to find some discussion of it in Malesko, but the Court there paid absolutely no attention to the private status. The Court in Malesko said that Malesko, that case, was in every meaningful sense the same as FDIC v. Meyer. FDIC v. Meyer was a suit against a public agency. If the case is in every meaningful sense the same as Meyer, then it must have been what mattered to the Court in Malesko, was that it was a suit against an entity, not public versus private. So we think there's no evidence in this case that — or, excuse me, nothing in the law that suggests this Court cares and ever has cared, the distinction between public and private remedies. But in Carlson, it was Bivens or no damage remedy. Here, that's not the case. Excuse me, Your Honor, I missed the first part of the question. In Carlson, the Court was operating on the theory that with respect to the Federal employee, it was a Bivens remedy for damages, or no remedy at all. No individual remedy. Right. Yes. Yes, Your Honor. And here, it is different from Carlson because there is a remedy against an individual. So we have the parallel remedies here, which didn't exist in Carlson, and that makes the two cases different. Your Honor, I think it's fair to say that in Carlson the Court expressed a preference for an individual remedy over an entity remedy, but I don't think it's fair to say that the Court addressed in Carlson how it would compare to individual remedies. That issue actually came up in Bivens. There was an individual remedy proposed that would be available under State law, and the alternative was a remedy under the Constitution itself. So when the Court was faced with two alternative individual actions, the Court said that we prefer the constitutional cause of action, and the reason in Bivens was we can't be certain really how State law works. Do you disagree that the — I know you have your argument on compensation. Yes. But with respect to deterrence, is there any significant difference between the two causes of action? In other words, if you think the most significant aspect of Bivens is to deter constitutional violations, doesn't that work equally as well or perhaps more effectively under the State law than under Bivens? Your Honor, I think in the end the question asks me to make a 50-State assessment of how State law works, and in that sense, one can only speak in generalization. So your answer is the same as under compensation, that the State law might be different or not? We think inasmuch as a cause of action is available, with the exception, as the Court noted, of damages caps, there we would expect to have a similar level of deterrence provided the damage is available. Who actually ends up paying in these Bivens actions? Is it the, I mean, Federal government or the individual? We would expect, first of all, obviously, the liability is imposed on the individual. We would expect, as a general matter, that there would be indemnification by the corporations. The question then is, of course, whether that gets passed on to the Federal government. And I don't think it's fair to — if the Court allows a Bivens action here, I think there's the suggestion that all of a sudden there will be a whole new realm of liability and costs, and that's simply not the case. I'm just looking in terms of the practical deterrence. A problem I've had with it in general, I don't know how much practical deterrence there is, is if you sue the individual and the individual doesn't actually pay, the government does. It seems to me perhaps more likely that in the private context that the individual may get stuck with some amount of the liability if the employer just says, look, you were off doing something you weren't supposed to do, we're not going to pay for it. Your Honor, I'm not versed in the indemnification rules of private prisons, but I would expect that there will be some instances where there's indemnification. I think the general rule in terms of the Federal government is that the Federal  Scalia. Scalia. Scalia. The question is, if the warden of a Maryland prison is aware that if he allows one prisoner to beat up another prisoner, he is only liable for maliciousness and not for deliberate indifference, if indeed there is a difference between the two, do you think that he's threading the needle that finely as far as deterrence is concerned? Your Honor, I think it's always been this Court's presumption that actors, legal actors, respond to the standards of law that are imposed. I can't say. Not at that level of refinement. I mean, it seems to me that any warden knows he's subject to State tort law, and that State tort law renders him liable for negligence and indeed for physical assaults. Some of your causes of action are intentional torts, not even negligence. I find it hard to believe that as far as deterrence is concerned, there's a dime's worth of difference between State law and Bivens action you're asking for. Your Honor, if it's the case that there's not a dime's worth of difference, that would only be at this point. And one can expect State law to change over time. I think one of the questions propounded to Mr. Franklin or Mr. Shah was, what if a State imposed a or created absolute immunity? I think — I take Your Honor's point to be that there could be a similarity at one point, and we agree that that could exist for any — for a particular circumstance. But we don't think this Court should take the enforcement of Federal rights in Federal prisons with regard to Federal actors and set up a scheme where that's handled through State law. There's simply not a justification there. Your Honor, I'd like to address the Westfall Act. They argue strenuously that Congress has already spoken in this case, and that's simply not the case. In the — put it this way. The FTCA and the Westfall Act deal only with Federal employees. The liability of the Federal government for actions of Federal employees. Their argument is essentially that Congress attempted to deal with whether or not by amending a statute that has nothing to do with private contractors. And that simply doesn't work. It's not — there's no suggestion here that Congress attempted to address this situation. Well, what was the purpose of making a reference to private contractors in the Westfall Act? Your Honor, the Court — excuse me, Congress did not make a reference to private contractors in the Westfall Act. They simply — the Congress simply referred to employees of the United States. And the reason the Court — excuse me, Congress referred to employees of the United States was because the FTCA only applies and has always only applied to contractors, excuse me, of employees of the United States. There would have been no reason to reach out, because it would be totally beyond the specter of the FTCA itself. I think, Your Honor, there's something else to note here with regard to Congress. At most, what we're dealing with here is congressional silence. They suggest that Congress is fit to take care of this. Nobody doubts that Congress is fit to step in and take care of this at some point in time. But this Court's practice with regards to Bivens has been when Congress steps in to stand back. But here we have congressional silence. As this — as the Court said in 2007, its most recent Bivens case was, when you're dealing — well, excuse me, the Wilkie case did not involve any specific congressional action. The Court viewed it essentially as congressional silence. The majority of this Court at that time said our evaluation in that instance is to figure out, excuse me, whether the Federal courts must make the kind of remedial determination that is appropriate for a common law tribunal. The Court at that point saw itself as a common law tribunal within the specific circumstance of whether or not a Bivens remedy should be available. That's not to say the Court should adopt some sort of roving common law power. It's simply to say where there's congressional silence and the case looks almost identical to Carlson, if not identical, that there's sufficient reason for this Court to find a Bivens cause of action here. If there's no further questions, I urge this Court to affirm the holding of the Ninth Circuit. Roberts. Thank you, counsel. Mr. Franklin, you have four minutes remaining. Thank you, Mr. Chief Justice. I just wanted to correct one possible misimpression. There's no allegation here that anyone was deliberately starved. With the allegation regarding the food, his allegation in his complaint is that he, because presumably his arms were in casts, he couldn't hold his tray in the cafeteria, and therefore he says, I had to buy my own food from the commissary because I didn't want to be humiliated by going to the cafeteria. We think that if that claim somehow stated a claim under the Eighth Amendment for deliberate indifference, that it would state a claim under negligence as well. And all of these claims essentially are that the prison failed to accommodate his injuries. Malesko was the same, and Malesko, the argument was, I didn't get to use an elevator because I had a preexisting condition, and that's what caused my harm. If there is something that negligently causes harm, unreasonably causes harm, there is a remedy in California. I would also note that if it does not cause harm, there's no Bivens remedy, because Congress in the PLRA has said you cannot bring any claim if you're a prisoner in Federal court unless it involves physical harm. Scalia. Do you want us to hold that there's no Bivens action in California? Is that what our opinion is going to say? I think the opinion could be, as it was in Malesko, there is no Bivens action because there are alternative remedies. We think that holding, as in Malesko, would apply everywhere. Everybody has, every State has a negligence cause of action. And I think one thing that crystallized the argument for me is the colloquy between Justice Scalia and my friend, where I think there was an admission that what they are actually seeking is a blanket cause of action to account for any possible instance in which there is an inadequate remedy. I think it goes even further. I think that they are asking for a blanket cause of action if somebody can hypothesize an interest, an issue. And even further than that, even if we can't hypothesize it, maybe somewhere along the line something might happen. We think that's a flipping, a turning Bivens on its head. Bivens is a narrow remedy that is only allowed when it is necessary. If those circumstances arise, they can be dealt with at that time. Ginsburg Do you know if any of these Bivens claims have been pled in the alternative, that is, Bivens remedy, but alternatively State law? Katyal Yes. That does happen, Your Honor. Yes. It happens, I think, relatively frequently. But in these circumstances, we would expect, if the Court rules our way, that there would be, in fact, resort to what are not only adequate but superior State law remedies, and that Bivens would then be reserved for another day if something happened that might implicate it. Are there no further questions? Ginsburg Is there diversity in this case? Katyal There may be. I think he alleged that there was. We would agree with the other side that the domicile of a prisoner is, at least in the circuits, determined by where the prisoner had been before they were in prison. And I think this particular prisoner had been somewhere other than California. So probably. I can't say about the amount in controversy, but probably. Ginsburg So you said there was a statute of limitations problem with starting new. Katyal Yes. Ginsburg What about if there is diversity? Katyal Well, the case was dismissed. Ginsburg Allowing an amendment. Katyal There's no the case was dismissed, Your Honor, and it was appealed only on the ground of a Bivens claim. So if that is rejected, there is no more case. There's nothing to amend. Roberts Thank you, counsel. The case is submitted.